UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CAROL DENISE BURRUSS, § <br> (BOP #79086-180) § <br> § <br> Petitioner, § <br> § <br> vs. § <br> § <br> TONYA BENTON HAWKINS, Warden, FPC § <br> Bryan, *et al.*, § <br> § <br> § <br> Respondents. § | CIVIL ACTION NO. H-22-2740 |

**MEMORANDUM OPINION AND ORDER**

Federal inmate Carol Denise Burruss filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that the Bureau of Prisons failed to award her the proper number of time credits under the First Step Act (FSA). (Docket Entry No. 1). The respondent, Warden Tonya Benton Hawkins, answered the petition with a motion for summary judgment. (Docket Entry No. 8). Burruss responded to the motion and attached extensive exhibits. (Docket Entry No. 9). With leave of court, Hawkins filed a reply. (Docket Entry No. 11). Having reviewed the petition, the motion, the response and reply, all matters of record, and the law, the court determines that Hawkins's motion should be granted and Burruss's petition dismissed without prejudice. The reasons are explained below.

**I.     Background and Procedural History**

In 2018, Burruss was sentenced to 120 months in prison followed by 8 years of supervised release based on a conviction for possession with intent to distribute 5 grams or more of methamphetamine. *See United States v. Burruss*, No. 7:18-CR-00126 (W.D. Tex. Oct. 11, 2018), at Dkt. 30. The court also revoked Burruss's supervised release in two separate cases and

sentenced her to concurrent terms of 18 months in prison. (Docket Entry No. 8-3, pp. 15, 22). Burruss is currently incarcerated at FPC Bryan with a projected release date of February 13, 2027. *See* Inmate Locator (bop.gov) (last visited Jan. 10, 2023).

On August 12, 2022, Burruss, or someone acting on her behalf, filed a petition for writ of habeas corpus, seeking 4,199 "Earned Time Credits" under the FSA, which Burruss contends entitle her to 2,119.5 days of credit toward her prison sentence.[1] (Docket Entry No. 1, p. 4). She alleges that the Bureau of Prisons (BOP) has not awarded her all of the FSA Time Credits to which she is entitled and has improperly applied only 365 days of those credits to her term of incarceration. (*Id.* at 4-18). Burruss admits that she has not exhausted her administrative remedies with the BOP, contending that doing so would be futile. (*Id.*). She asks the court to "enforce the First Step Act," by reducing her term of incarceration by 2,119.5 days. (*Id.* at 18). Burruss's petition indicates that she signed it electronically using "DocuSign."[2] (*Id.* at 19).

Hawkins responded with a motion for summary judgment. (Docket Entry No. 8). She first contends that Burruss's petition should be dismissed without prejudice because it was signed and filed by an unauthorized third party in violation of 28 U.S.C. § 2242. (*Id.* at 15-17). In the alternative, Hawkins contends that Burruss's petition should be dismissed without prejudice because she failed to exhaust her administrative remedies. (*Id.* at 5-13). Hawkins attached the affidavit of Alice Diaz-Hernandez, the Associate Warden in charge of the Administrative Remedy

---

[1] The parties refer to the time credits earned under the FSA as "Earned Time Credits" or "ETCs." The BOP rules refer to the credits as "FSA Time Credits." The court uses "FSA Time Credits" in this opinion to refer to those credits earned under the FSA.

[2] DocuSign is an American company that provides, among other services, a way to sign documents electronically and transmit and store them on a cloud-based platform. Signatures processed by DocuSign comply with the ESIGN Act, 15 U.S.C. § 7001, *et seq*. The service relies on either email or a mobile device app to obtain both authorizations to sign and signatures. *See* https://en.wikipedia.org/wiki/DocuSign (last visited Jan. 9, 2023).

Program at FPC Bryan, who testifies that Burruss completed only two of the four steps of the administrative remedy process before filing her petition. (Docket Entry No. 8-1, p. 3). Diaz-Hernandez attached documents to her affidavit setting forth details of the BOP administrative remedy process and supporting her testimony. (*Id.* at 5-18).

Also attached to Hawkins's motion is the affidavit of Rita Siler, the Case Management Coordinator at FPC Bryan in charge of computing inmate sentences and credits. (Docket Entry No. 8-2). In her affidavit, Siler identifies the dates on which Burruss was eligible to receive FSA Time Credits, and she explains the calculation of those credits. (*Id.* at 3-4). Siler testifies that as of October 9, 2022, Burruss's FSA Time Credits have been calculated and applied, which resulted in a credit of 365 days against her prison sentence. (*Id.* at 5). The remainder of Burruss's FSA Time Credits, and any future FSA Time Credits she earns, will be applied toward her time in pre-release custody or on supervised release. (*Id.*). Hawkins asserts that this evidence shows that Burruss's FSA Time Credits have been properly calculated and applied and that she is not entitled to the relief she seeks in her petition. (Docket Entry No. 8, pp. 18-28).

Burruss filed a response, admitting that her son signed and filed her petition but contending that he was authorized to do so under a power of attorney. (Docket Entry No. 9, p. 4). She also contends that she exhausted the remaining two steps of the administrative remedy process while her petition was pending. (*Id.* at 2). She argues that the BOP rules regarding FSA Time Credits do not reflect Congress's intent regarding how the credits are to be earned, and she asks the court to award the additional credits to which she contends she is entitled.

The court granted Hawkins leave to file a reply. (Docket Entry No. 12). Hawkins filed documents showing that Burruss prematurely filed her appeal to the BOP Office of General Counsel (OGC). (Docket Entry No. 11-1, pp. 3-4). This premature appeal was rejected by the

OGC.  (*Id.* at 4).  Burruss was instructed to resubmit her appeal to the OGC after her regional appeal was concluded, but she never did so.  (*Id.*).  Hawkins contends that these documents show that Burruss never properly exhausted her administrative remedies, whether before or after filing her petition.  (Docket Entry No. 11, pp. 7-19).  Hawkins also asserts that the claim raised in Burruss's petition is different from the claim she raised in the administrative remedies process and so is unexhausted for this reason as well.  (*Id.* at 19-22).

## II.     The Legal Standards

### A.     Summary-Judgment Standard

Hawkins has moved for summary judgment in her favor.  Summary judgment is proper when the record shows that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (cleaned up).  "The burden then shifts to the nonmovant to show the existence of a genuine fact issue for trial."  *Id.* (cleaned up).

When determining whether issues of fact exist that would preclude summary judgment, the court must construe any disputed facts in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citation omitted).  This general rule "applies with equal force in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  But to satisfy his or her burden on summary judgment, the nonmoving party must point to record evidence that supports a conclusion that genuine issues of material fact exist.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party

may not rely on the allegations or denials in their pleadings or on their own unsubstantiated assertions to avoid summary judgment. *See Anderson*, 477 U.S. at 256; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### B. Pro Se Pleadings

Burruss is representing herself in this habeas proceeding. Habeas petitions filed by self-represented petitioners are not held to the same stringent and rigorous standards as pleadings filed by lawyers and instead must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). But even under a liberal construction, self-represented petitioners "must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (footnotes omitted).

## III. Discussion

### A. Petition Filed by Power of Attorney

Hawkins first contends that the court should dismiss Burruss's petition because she did not sign and verify it; instead it was signed and filed on her behalf by an unauthorized third party. (Docket Entry No. 8, pp. 15-17). Federal Rule of Civil Procedure 11 requires that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). In addition, the habeas statutes require that a habeas petition "be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242.

While § 2242 permits someone other than the petitioner to sign a habeas petition, the Fifth Circuit has explained that a non-lawyer acting on behalf of a prisoner "may not file a petition in

every case in which the person actually detained might file a petition." *Weber v. Garza*, 570 F.2d 511, 513 (5th Cir. 1978) (per curiam). Instead, a non-lawyer may sign and file a habeas petition on behalf of someone else only when the petition "establishes some reason or explanation, satisfactory to the court, showing: (1) why the detained person did not sign and verify the petition and (2) the relationship and interest of the would-be 'next-friend.'" *Id.* at 513-14. The petition must also "set forth an adequate reason or explanation of the necessity for resort to the 'next friend' device." *Id.* at 514. Examples of the necessary use of a "next friend" include an "[i]nability to understand the English language or the situation, particularly in the case of aliens, impossibility of access to the person, or mental incapacity." *Id.* at 514 n.4; *see also Uranga v. Davis*, 893 F.3d 282, 285-86 (5th Cir. 2018) (allegations of a looming court deadline and the prisoner's inability to meet with his writ-writer due to a lockdown were sufficient to explain why his Rule 59(e) was signed and filed by a fellow inmate). The "next friend" has the burden to establish that his status is proper. *See Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990). If the petitioner does not satisfy these requirements, the court has no jurisdiction to consider the petition. *See Weber*, 570 F.2d at 514.

Hawkins asserts that Burruss does not have access to any technology at FPC Bryan that would permit her to DocuSign a document. (Docket Entry No. 8, p. 16). But Burruss's petition was "DocuSigned" by someone purporting to be Carol Denise Burruss. (Docket Entry No. 1, p. 19). The petition does not state that it was signed by someone other than Burruss, and it does not contain any facts explaining why someone else signed the petition on her behalf. Hawkins argues that because Burruss could not have DocuSigned the petition herself and because she offers no explanation for why someone else signed on her behalf, she has not satisfied the requirements of § 2242.

6

In her response, Burruss admits that she did not sign her petition. (Docket Entry No. 9, p. 4). She alleges that she had her son sign it under a power of attorney, and she attaches a copy of the alleged power of attorney as an exhibit to her response. (Docket Entry No. 9-1, p. 94). Burruss offers no explanation for why her son's participation in signing and filing the petition was not disclosed until the issue was raised by Hawkins. She also offers no explanation in either her petition or her response for why she did not sign the petition herself or why she believed it was necessary to have her son sign for her. Her allegations are insufficient to satisfy the requirements of § 2242 for two reasons.

First, the power of attorney does not permit Burruss's non-lawyer son to sign and file a habeas petition on her behalf. Courts have held that "[a]n executed power of attorney . . . does not authorize an unlicensed attorney to file a habeas corpus petition on behalf of a petitioner as a 'next friend.'" *Reed v. United States*, No. 3:22-CV-1683-B-BK, 2022 WL 4239361, at *1 (N.D. Tex. Aug. 19, 2022) (citing *Weber*, 570 F.2d at 514), *report and recommendations adopted*, 2022 WL 4240890 (N.D. Tex. Sept. 14, 2022); *see also United States v. Musgrove*, 109 F.3d 766, 1997 WL 114970, at *1 (5th Cir. Feb. 20, 1997) (per curiam) ("[A] power of attorney does not authorize a non-attorney to file legal documents on behalf of others."); *Stubblefield v. U.S. Marshal Gary Blankinship*, No. H-18-0801, 2018 WL 1730316, at *1 (S.D. Tex. Apr. 10, 2018) (a power of attorney is not sufficient to justify "next friend" status in a habeas proceeding). Burruss does not allege that her son is a licensed attorney. And even if the power of attorney is otherwise valid, it is legally insufficient to authorize her son, a non-lawyer, to sign and file legal documents, including a habeas petition, on her behalf.

Second, Burruss does not show that it was necessary for someone else to sign and file her habeas petition. She offers no explanation for why she could not sign and date her petition or why

7

it was necessary for her son to sign and file it on her behalf. There is no indication that Burruss was either physically or mentally incapable of signing her petition, and there were no looming deadlines that required immediate action. In the absence of such allegations, the court has no basis upon which to conclude that it was necessary for Burruss's son to sign and file her petition for her as a "next friend." And without a determination that the use of a "next friend" was necessary, this court has no jurisdiction to consider the petition signed and filed by Burruss's son. Her petition is dismissed without prejudice for lack of jurisdiction.

### B. Exhaustion of Administrative Remedies

In the alternative, Hawkins argues that Burruss's petition should be dismissed because she failed to exhaust the administrative remedies available to her through the BOP.

The law is well-settled that a prisoner must first exhaust all available administrative remedies before challenging the administration of his or her sentence in a federal habeas petition. *See Gallegos-Hernandez v. United States,* 688 F.3d 190, 194 (5th Cir. 2012) (per curiam); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). The exhaustion doctrine requires the petitioner to "fairly present all of his claims" through all steps of the available administrative remedy process before pursuing federal habeas relief. *Dickerson v. Louisiana*, 816 F.2d 220, 228 (5th Cir. 1987). Prisoners who voluntarily stop pursuing their administrative remedies prematurely have not exhausted those remedies. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Similarly, prisoners who continue to pursue administrative remedy proceedings after filing their habeas petition have not satisfied the exhaustion requirement. *See Fuller*, 11 F.3d at 62; *see also Cartwright v. Outlaw*, 293 F. App'x 324, 324 (5th Cir. 2008) (per curiam); *Little v. U.S. Parole Comm'n*, 67 F. App'x 241, 2003 WL 21108493, at *1 (5th Cir. Apr. 21, 2003) (per curiam) (rejecting claim that an administrative appeal filed "right after" the prisoner filed his habeas

petition was sufficient to show exhaustion). When a prisoner fails to exhaust his or her administrative remedies before filing a habeas petition, the petition is subject to dismissal. *See Fuller*, 11 F.3d at 62.

As is relevant to a claim for FSA Time Credits, the BOP provides a four-step administrative remedy process through which prisoners can present a complaint. *See* 28 C.F.R. § 542.10–542.18.[3] In the first step, the prisoner presents the issue to staff at the facility where he or she is housed using a BP-8 form, and staff attempts to informally resolve the issue. *See* 28 C.F.R. § 542.13(a). If the issue is not resolved to the prisoner's satisfaction, the second step is for the prisoner to file a formal Administrative Remedy Request with the warden using a BP-9 form. *See* 28 C.F.R. § 542.14(a). The warden has 20 days in which to respond to the request, but this time may be extended once for an additional 20 days. *See* 28 C.F.R. § 542.18. If the prisoner does not receive a response within the permitted time, including any extension, the request is deemed denied. *Id.* If the inmate is not satisfied with the warden's response, the third step requires the inmate to appeal to the Regional Director within 20 days of the warden's response by submitting a BP-10 form. *See* 28 C.F.R. § 542.15(a). The Regional Director has 30 days in which to respond to the appeal, but this 30-day period may be extended once for another 30 days. *See* 28 C.F.R. § 542.18. If the prisoner does not receive a response within the permitted time, including any extension, the appeal is deemed denied. *Id.* If the prisoner is not satisfied with the Regional Director's response, the final step requires the prisoner to appeal within 30 days of that response to the OGC using a BP-11 form. *See* 28 C.F.R. § 542.15. The OGC has 40 days in which to respond to the appeal, and this 40-day period may be extended once by 20 days. *See* 28 C.F.R. § 542.18. If the prisoner does

---

[3]Hawkins also provided documentation concerning the administrative remedy process in her motion. (Docket Entry No. 8-1, pp. 5-12).

not receive a response within the permitted time, including any extension, the appeal is deemed denied. *Id.* The appeal to the OGC is the final administrative appeal provided by the BOP. *Id.*

The evidence provided by Hawkins shows that Burruss failed to exhaust her administrative remedies before filing her habeas petition. Burruss submitted her BP-9 Request for Administrative Remedy to the warden on August 1, 2022, asking that the BOP apply her FSA Time Credits to her sentence. (Docket Entry No. 11-1, pp. 20-21). The warden denied her request the same day. (*Id.* at 19). On August 10, 2022, Burruss submitted her BP-10 Regional Administrative Remedy Appeal of the warden's decision, again asking that the BOP apply her FSA Time Credits to her sentence. (Docket Entry No. 11-1, p. 23). Two days later, Burruss filed her habeas petition alleging that her FSA Time Credits were improperly calculated. (Docket Entry No. 1).

In her response to Hawkins's motion, Burruss admits that her petition was filed before the time permitted for the Regional Director to respond to her appeal had expired. (Docket Entry No. 9-1, p. 17). But she contends that she exhausted the remaining steps of the administrative remedy process while this petition was pending. (Docket Entry No. 9, p. 2). She does not explain why she elected to file her petition before she exhausted the remaining steps in the administrative remedy process, nor does she explain why she raises a claim in her petition different from the one she pursued with the BOP.

The undisputed evidence shows that Burruss did not complete her appeal to the Regional Director or appeal to the OGC before filing her habeas petition, as is required to exhaust her administrative remedies. In addition, Burruss never submitted any request to the BOP—whether formal or informal—concerning her claim that her FSA Time Credits were improperly calculated. By neither pursuing the available administrative remedies to conclusion nor raising her current claim with the BOP, Burruss failed to fairly present her claim through all steps of the

10

administrative remedy process before filing her petition and so failed to exhaust her administrative remedies. Her petition must be dismissed without prejudice for lack of exhaustion.

### C. Merits

Finally, if this court were to reach the merits of Burruss's claims, the court would deny her petition because she is not entitled to the relief she seeks. Burruss raises two challenges to the calculation of her FSA Time Credits: (1) she should earn FSA Time Credits for each approved activity rather than for each day of participation in approved activities; and (2) all of her FSA Time Credits should be applied to reduce her prison sentence. Neither of these arguments is supported by the law.

#### 1. The Claim for Multiple FSA Time Credits Per Day

Burruss first alleges that the BOP has failed to award her all of the FSA Time Credits to which she is entitled because she should earn multiple FSA Time Credits per day if she participates in multiple approved Evidence-Based Recidivism Reduction (EBRR) programming or Productive Activities (PA) in a single day. This claim is contradicted by the language of the FSA.

The FSA provides that eligible prisoners will earn time credits as follows:

(A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

    (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

    (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A). Under this provision, Congress made clear that a prisoner earns FSA

Time Credits based on the number of days in which they participate in eligible programs, not the number of eligible programs in which they participate. *See, e.g., Cazares v. Hendrix*, 575 F. Supp. 3d 1289, 1301 (D. Ore. 2021) (interpreting the term "day" in § 3632(d)(4)(A) as meaning any amount of time spent participating in EBRR programming or PAs during one calendar day based on "the BOP's well-established practice of awarding a full day of credit for any amount of time in custody or detention").

The legislative history of the BOP rules also contradicts Burruss's interpretation of the FSA. Recognizing that the FSA did not define the term "day," the BOP originally proposed that a "day" be defined as "one eight-hour period of participation in an EBRR Program or PA that an eligible inmate successfully completes." *See* FSA Time Credits, 87 Fed. Reg. 2705, 2706 (Jan. 19, 2022). Multiple comments were received indicating that this definition did not comport with Congressional intent that prisoners receive FSA Time Credits based on the number of "calendar days" of their participation. *Id.* After considering the comments, the BOP amended its rule to calculate FSA Time Credits based on the number of calendar days of participation rather than the number of hours of participation. *Id.* at 2706-07.

Burruss's interpretation, which would calculate FSA Time Credits based on the number of eligible programs in which a prisoner participates rather than the number of days of participation in such programming, has no support in either the applicable statutory language or the legislative history of either the FSA or the BOP rules. She is not entitled to additional FSA Time Credits based on this unsupported interpretation. Any claim for such additional credits is denied.

### 2. The Claim for an Additional Reduction in Prison Sentence

Burruss also alleges that the BOP is violating the FSA by refusing to apply all of her FSA Time Credits to reduce her prison sentence. She contends that the BOP's rule limiting her to 365

days of credit against her prison sentence violates Congressional intent. But the BOP's application of her FSA Time Credits is supported by the language of 18 U.S.C. § 3624.

Section 3624(g) permits the BOP to release eligible prisoners to either home confinement or a residential reentry center when their accrued time credits equal the remainder of their term of imprisonment. 18 U.S.C. § 3624(g)(1). But prisoners who have been sentenced to a term of supervised release following their prison sentence are subject to an additional limitation:

> **Supervised release.**--If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, <u>not to exceed 12 months</u>, based on the application of time credits under section 3632.

18 U.S.C.§ 3624(g)(3) (emphasis added). Under this provision, a prisoner sentenced to a term of supervised release may apply only 12 months of time-credits—whether FSA Time Credits or otherwise—toward early release.

The records before the court show that Burruss was sentenced to an 8-year term of supervised release to follow her term of imprisonment. (Docket Entry No. 8-3, pp. 3-8). As of October 14, 2022, the BOP has credited Burruss with 525 day's of FSA Time Credits, and it has applied 365 days of those FSA Time Credits to reduce her prison term. (Docket Entry No. 8-2, p. 5). The remainder of her credits will be applied to her time in pre-release custody or on supervised release. (*Id.*). While Burruss disagrees with this application, it is required by § 3624(g)(3).

In addition, and contrary to Burruss's argument in her response, the BOP has not limited her to earning only 365 days of FSA Time Credits. Burruss may continue to earn FSA Time Credits while she is in prison, but any additional FSA Time Credits will not be applied to reduce her prison term. Instead, all additional FSA Time Credits will be applied to reduce her time in pre-release custody or on supervised release. (Docket Entry No. 8-2, p. 5).

Because the BOP has properly applied Burruss's FSA Time Credits to her sentence, she is not entitled to the relief she seeks in her petition.

### IV.     Conclusion

The court grants the respondent's motion for summary judgment, (Docket Entry No. 8), and dismisses Burruss's petition without prejudice because it was signed by an unauthorized third-party and because she failed to exhaust her administrative remedies. The court denies as moot any remaining pending motions. Because Burruss brought her claim under § 2241, no certificate of appealability is required. *See Padilla v. United States*, 416 F.3d 424, 425 (5th Cir. 2005) (per curiam); *Pack v. Yusuff*, 218 F.3d 448, 451 n.3 (5th Cir. 2000).

SIGNED on January 19, 2023, at Houston, Texas.

                                                         Lee H. Rosenthal
                                            United States District Judge